In re ALPHA-OMEGA COMMUNICATIONS, INC. d/b/a WGHW, 1110 AM, Debtor.

Orey L. FERRELL, Jr., individually; in his capacity as an officer and shareholder of Alpha Omega Communications, Inc., Plaintiff,

v.

Basil COLLAMORE; individually; in his capacity as an officer and shareholder of Alpha Omega Communications, Inc.

and

Garnita M. Selby, Esquire; individually; in her capacity as an officer, shareholder and corporate counsel of Alpha Omega Communications, Inc., Defendants.

Bankruptcy No. 85–00793G.
Adversary No. 85–0352G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 12, 1985.

Leonard Zack, Susan Greenspun, Philadelphia, Pa., for plaintiff, Orey L. Ferrell, Jr., individually; in his capacity as an officer and shareholder of Alpha Omega Communications, Inc.

Larry A. Colston, Philadelphia, Pa., for debtor/defendants, Alpha-Omega Communications, Inc., Garnita Selby and Basil Collamore.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The first of two issues in the case at bench is whether after the filing of a chapter 11 petition a majority of the stock holders of a debtor may divest the president of the debtor from office. The second issue is whether a majority of the board of directors may issue to themselves stock after the filing of the petition due to their "revaluation" of a capital contribution made in cash at the time of incorporation and due to the prepetition rendition of services to the debtor. For the reasons outlined herein, we conclude that the president may be ousted from office but that the postpetition payment in stock is not allowable here.

The facts of this case are as follows:[1] The debtor, Alpha-Omega Communications, Inc., was formed by Orey L. Ferrell ("Ferrell"), Basil Collamore ("Collamore") and Garnita M. Selby, Esquire ("Selby") who were appointed to the board of directors. In exchange for a capital contribution of approximately $5,000.00 and the promise of

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

future services, Ferrell was given 47.2% of the 1,000 shares of the debtor's stock. For a capital contribution of $50,000.00 Collamore was given 46.8% of the stock and Selby was given the remaining 6% in exchange for past services and the promise of future services. No by-laws for the debtor were ever adopted.

The following year the debtor filed its petition for reorganization under chapter 11. Thereafter, Ferrell, Collamore and Selby met at a duly scheduled meeting of the board of directors. At the meeting, Collamore and Selby, holding a majority interest of the stock, voted to increase the number of shares from 1,000 to 5,000. In compensation for services performed by Selby since the formation of the debtor, Collamore and Selby voted to issue additional stock to her while the two also voted to issue additional shares to Collamore on the basis of their "revaluation" of the $50,-000.00 capital contribution originally made by him. The three consequently held the company's stock in the following proportions: Ferrell, 9.9%; Collamore, 55%; and Selby, 16%. The remainder of the stock was unissued. At the meeting, Collamore and Selby also voted to dismiss Ferrell as president of the debtor.

After the meeting of the board of directors, Ferrell moved in state court for a preliminary injunction staying the effect of all resolutions adopted by the directors at that meeting. The state court, not being apprised of the filing of the petition for reorganization, enjoined implementation of the resolutions. Upon hearing of the pendency of the reorganization, the state court limited the duration of the injunction to such time as this bankruptcy court ruled on the matter.

■ Under Pennsylvania's Business Corporation Law the board of directors, by majority vote, has the power to fill a vacancy in the office of president of a corporation as well as other offices unless the by-laws provide otherwise. Pa.Stat.Ann. tit. 15, § 1406 (Purdon 1967 & Supp.1985). The power of the board likewise extends to the removal of the president. Pa.Stat.Ann.

tit. 15, § 1407 (Purdon 1967). As applied here, in the absence of the intervention of bankruptcy, state law provides that the actions of Selby and Collamore served to divest Ferrell of corporate office. Ferrell's contention that adequate minutes of the board of directors' meeting were not kept is insufficient to upset this conclusion since all parties agree on the substance of the meeting. Ferrell has posed no argument as to why the filing of a petition for reorganization should change this result and we perceive none. We hold that Ferrell was validly discharged as president of the debtor.

On the issue of whether the postpetition issuance of additional stock was valid, the debtor cites Pa.Stat.Ann. tit. 15, § 1603 (Purdon 1967), which states in part:

A. Shares of a business corporation shall not be issued except for money, labor done, or money or property actually received.... *Subscriptions for shares, which are made after incorporation, shall be made payable with consideration of the character and value determined by the board of directors* .... For the purpose of determining whether shares have been fully paid for, in order to fix the extent of the outstanding obligation of a shareholder to the corporation with respect to such shares, the value placed by the incorporators or the board of directors, as the case may be, upon the consideration, other than cash, with which the subscriptions for shares are made payable, shall be conclusive.

Pa.Stat.Ann. tit. 15, § 1603 (Purdon 1967) (emphasis added). The debtor asserts that under this provision the board of directors was authorized to issue additional stock to Collamore and Selby on the basis of Selby's rendition of post-incorporation services to the debtor and the director's "revaluation" of Collamore's capital contribution.

An analysis of the debtor's position reveals that two members of the board of directors, Selby and Collamore, voted to issue additional stock to themselves in a clear and classic example of self-dealing by

"insiders." As stated by the Supreme Court on this subject in the case of *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939):

A director is a fiduciary. *Twin-Lick Oil Co. v. Marbury*, 91 U.S. 587, 588 [23 L.Ed. 328]. So is a dominant or controlling stockholder or group of stockholders. *Southern Pacific Co. v. Bogert*, 250 U.S. 483, 492 [39 S.Ct. 533, ——, 63 L.Ed. 1099]. Their powers are powers in trust. *See Jackson v. Ludeling*, 21 Wall. [88 U.S.] 616, 624 [22 L.Ed. 492]. *Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.* *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599 [41 S.Ct. 209, ——, 65 L.Ed. 425]. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.

   \*    \*    \*    \*    \*    \*

He who is in such a fiduciary position cannot serve himself first and his *cestuis* second. He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty. He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters.

   \*    \*    \*    \*    \*    \*

He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly. He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the *cestuis*. Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation.

*Pepper v. Litton*, 308 U.S. at 306–07 and 311, 60 S.Ct. at 245–46 and 247 (emphasis added). The Supreme Court's position on insider dealing has been adopted by the Pennsylvania courts. *See, e.g., In Re Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980); *Robinson v. Brier*, 412 Pa. 255, 257, 194 A.2d 204 (1963). Furthermore, the Pennsylvania Business Corporation Law states that:

§ 1408. Relation of directors and officers to corporation

A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances.

B. In discharging the duties of their respective positions, the board of directors, committees of the board, individual directors and individual officers may, in considering the best interests of the corporation, consider the effects of any action upon employes, suppliers and customers of the corporation, communities in which offices or other establishments of the corporation are located and all other pertinent factors.

Pa.Stat.Ann. tit. 15, § 1408 (Purdon 1967 & Supp.1985).

Under Pa.Stat.Ann. tit. 15, § 1603 the *value* fixed by the board of directors for property or services received in payment of shares is "conclusive" and a court may not substitute its judgment of value for that of the board. *Maguire v. Osborne*, 388 Pa. 121, 130 A.2d 157 (1957). Nonetheless, when a valuation is motivated by fraud or selfish considerations, a court may subject that valuation to scrutiny. *Maguire*, 388 Pa. at 124, 130 A.2d 157. When a challenger has substantiated his

850

averments that the board's actions were motivated by fraud and self-dealing, the burden of producing evidence to refute the assertion shifts to the board of directors. *Pepper v. Litton*, 308 U.S. at 306, 60 S.Ct. at 245; *Robinson v. Brier*, 412 Pa. at 259, 194 A.2d 204.

Applying this authority to the case before us we conclude that the board of directors failed to comply with § 1603 which requires that the board fix a value on the post-incorporation services rendered by Selby. The issuance of additional stock to Collamore on the basis of the board of director's "revaluation" of his $50,000.00 capital contribution by cash or check is likewise unsupportable. We also base our decision to strike down the resolution in question on the alternative basis that the debtor failed to carry its burden of producing evidence that the adoption of the resolution was not motivated by fraud.

In light of these conclusions we will enter an order dissolving the injunction which stayed the implementation of the corporate resolution to divest Ferrell of corporate office. We will also order that the resolution authorizing the issuance of additional stock to Collamore and Selby be stricken as void.